464

Disciplinary Board Docket No. 33 D.B. 82.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania,

GILARDI, *Member,* August 28, 1991—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for reinstatement.

## HISTORY OF PROCEEDINGS

Petitioner, [ ], was disbarred by Supreme Court order dated July 6, 1982, pursuant to his June 26, 1982, statement of resignation, which was executed in accordance with Rule 215, Pa.R.D.E.

Petitioner tendered his resignation after the Office of Disciplinary Counsel filed a petition for emergency interim suspension order and related relief in June 1982, at which time the Office of Disciplinary Counsel alleged that petitioner converted, commingled, misappropriated

and dissipated approximately $15,000 from the heirs of [A], in violation of:

(A)  D.R. 1-102(A)(4)—which prohibits an attorney from engaging in conduct involving dishonesty, fraud, deceit or misrepresentation;

(B)  D.R. 6-101(A)(3)—which prohibits an attorney from neglecting a legal matter entrusted to him;

(C)  D.R. 9-102(A)—which provides that an attorney shall maintain all client funds in one or more identifiable bank accounts in the state in which the law office is situated;

(D)  D.R. 9-102(B)(1)—which provides that an attorney shall promptly notify a client of the receipt of his funds, securities or other properties;

(E)  D.R. 9-102(B)(3)—which provides that an attorney shall maintain complete records of all funds, securities and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them; and

(F)  D.R. 9-102(B)(4)—which provides that an attorney shall promptly pay or deliver to the client as requested by a client the funds, securities or other properties in the possession of the lawyer which the client is entitled to receive.

On June 15, 1982, petitioner filed his answer to the petition for emergency interim suspension, at which time he denied substantial wrongdoing. However, shortly thereafter he submitted his voluntary statement of resignation, and subsequently acknowledged he had no defense to the misconduct charged by the Office of Disciplinary Counsel.

On August 11, 1989, petitioner filed a petition for reinstatement and reinstatement questionnaire, together with supporting documentary evidence.

A hearing on the matter was held on July 31, 1990, before Hearing Committee [   ], which was chaired by [   ].

On August 3, 1990, petitioner filed a brief in support of his request for reinstatement.

The Office of Disciplinary Counsel filed a brief on the matter on September 24, 1990, and recommended that the petition for reinstatement be denied.

On December 10, 1990, Hearing Committee [   ] filed its report, and unanimously recommended that the petition for reinstatement be granted. Neither party filed a brief on exceptions to the Hearing Committee recommendation.

The matter was adjudicated at the February 5, 1991, meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

## FINDINGS OF FACT

The board adopts the findings of fact underlying the misconduct which led to petitioner's disbarment as they were alleged by the Office of Disciplinary Counsel and admitted to by petitioner:

(1) Petitioner, whose principal office is situated at Commerce Building, 300 North Second Street, Harrisburg, Pennsylvania 17101, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) Petitioner, [   ], was born in 1934, admitted to practice law in the Commonwealth of Pennsylvania in 1964, and his office was situated at [   ].

(3) In or about November 1979, petitioner was retained by several heirs of the estate of [A] in regard to a quiet title action which had been filed by [B] Corporation in the Court of Common Pleas of [F] County at no. [   ].

(4) On March 24, 1981, [B], by its attorneys, issued a check to respondent in the amount of $15,000 payable to "[petitioner], attorney for [A] heirs."

(a) A notation on the back of the canceled check indicates that it was negotiated "for deposit only to [petitioner], trustee account."

(5) Thereafter, respondent made repeated misrepresentations to various [A] heirs who contacted petitioner regarding the settlement. For example:

(a) In a telephone call with Mrs. [C] on March 29, 1982, he informed her that distribution checks would be mailed to the heirs in approximately "10 to 12 days" because the "money has been invested in a one-year certificate that will not mature for another couple of weeks," or words to similar effect.

(b) On about March 31, 1982, Mrs. [D] contacted him by telephone and he informed her that he had invested the money in "a six-month certificate," but gave no definite date as to when it would mature.

(6) The heirs had not authorized petitioner to invest the funds in question.

(7) On or about May 1, 1982, heirs [C] and [D] each received a letter from petitioner enclosing a check in the amount of $641.52, purportedly representing their respective portions of the settlement.

(a) Mrs. [C] deposited petitioner's check in her account at [E] Trust Company of [ ]. Subsequently on May 18, 1982, the bank informed Mrs. [C] that the check had been returned, unpaid and dishonored, because of "insufficient funds."

(b) Similarly, on or about May 4, 1982, Mrs. [D] deposited petitioner's check, and on May 10, 1982, the bank informed Mrs. [D] that the check had been returned, unpaid and dishonored, because of "insufficient funds."

(c) On or about May 12, 1982, after petitioner had been notified that his "legal account" check to Mrs. [D] had proven worthless, he provided as a replacement a *cashier's* check, drawn on the same bank, but *not* on any account of his.

(8) After statements of complaint had been filed with the Office of Disciplinary Counsel, Disciplinary Counsel sent petitioner a letter of allegations with attached exhibits, dated May 17, 1982.

(a) Therein, Disciplinary Counsel asserted that petitioner still owed the [A] heirs $15,000 (less counsel fees), for payment of which several of the heirs had made repeated unsuccessful requests since March 1981.

(b) Therein, Disciplinary Counsel also requested that petitioner provide pertinent bank statements, together with any separately-maintained ledger or other documents, accounting for his handling and disposition of the funds of the [A] heirs held by him.

(9) Petitioner answered by letter dated May 28, 1982. Therein, petitioner:

(a) Failed to answer the specific assertions in the letter of allegations that he had failed to render any appropriate accounts, and had failed promptly to pay

to his clients the funds in his possession which were due them.

(b) Stated that "a portion of this ($15,000) has been received by some of the heirs."

(c) Failed to provide Disciplinary Counsel with bank statements, ledgers or other documents, as requested, to show that he held the subject funds inviolate.

We also note the following facts, which prove additional misconduct and were stipulated to by the parties:

## I.  [G]  ESTATE

(10)  [H] died testate on December 3, 1976.

(11)  Letters of administration c.t.a. were issued to petitioner in [F] County, Pennsylvania on or about December 22, 1976, at which time petitioner also undertook to represent the estate of [H] as its attorney.

(12)  On or about May 2, 1977, an inheritance tax payment in the amount of $14,000 was made by petitioner to the Commonwealth of Pennsylvania.

(13)  On or about May 22, 1978, petitioner filed an inventory in said estate, listing an inventory value of $146,490.43.

(14) [H] left several residuary beneficiaries, including [G], who died in [  ], New Hampshire on February 12, 1978.

(a)  [I] was appointed administrator of the estate of [G].

(b)  [J] acted as the attorney for this estate.

(15)  Between 1979 and April 1982, attorney [J] and attorney [K] (from [F] County, Pennsylvania) contacted petitioner on numerous occasions regarding his failure to file a formal accounting in the estate of [H].

(a)  Petitioner did not then file the accounting.

(b) A petition to compel the filing of an account was thereupon filed with the [F] County Court of Common Pleas and, by order dated May 11, 1982, the court issued a rule to show cause as to why an account and audit statement should not be filed immediately.

(16) Petitioner thereupon filed an account, together with an audit statement, indicating total assets of the estate of [H] in the amount of $157,976.86, less credits and debts of $21,549.08 for a distributive balance of $136,427.78. The audit statement further indicated that:

(a) The estate of [G] was entitled to a residuary of $17,657.83; and

(b) The full amount of the balance for distribution per petitioner's account had been disbursed and that all of the beneficiaries under the will had been advanced all sums due them.

(17) It was not until March of 1981 that petitioner paid any funds to the [G] estate, at which time he paid $13,000 to that estate.

(18) As of the date of the filing of the account, petitioner had not paid the full amount due to [G] estate.

(19) The estate of [H] was called for audit on September 27, 1982, at which time petitioner's account and audit statements were confirmed by the court.

(20) Petitioner was unable to pay the remaining $4,656.83 due the [G] estate because he had misappropriated those funds for his own use.

(21) The remaining $4,656.83 was paid to the [G] estate by the Pennsylvania Client Security Fund.

(22) In August of 1989, petitioner reimbursed the Client Security Fund in full, plus interest.

(23) The beneficiaries of the [G] estate have no objection to petitioner's reinstatement.

## II.   [L] ESTATE

(24)   On August 30, 1981, [L] died, testate, in [F] County, Pennsylvania.

(25)   On September 4, 1981, petitioner was granted letters testamentary as the executor of the [L] estate.

(26)   The assets of the estate consisted solely of cash in the amount of $19,417.53, and some household furnishings.

(27)   As of October 14, 1981, after payment of certain expenses, petitioner was still entrusted with $16,400 on behalf of the [L] estate.

(28)   Also on October 14, 1982, petitioner executed a judgment note in favor of [M] and [N], the sole legatees of the [L] estate, for the amount of $16,400 with interest at 12 percent.

(29)   By mid-June of 1982, after payment of certain expenses on behalf of Mr. [M] and Ms. [N], petitioner was still entrusted with $15,791.61 in principal and interest.

(30)   As of June 17, 1982, petitioner only had $169.25 in the estate account.

(31)   On June 29, 1982, petitioner filed the above-mentioned judgment note in the Court of Common Pleas of [F] County.

(32)   Petitioner had commingled the remainder of the estate assets with his own and used them for his own purpose.

(33)   The sole legatees of the [L] estate, [M] and [N], would testify that they never gave petitioner permission to use those funds for himself or to commingle them with his own. (This is not a stipulation to the accuracy of the facts to which Mr. [M] and Ms. [N] would testify.)

(34) By August of 1982, petitioner had repaid the entire amount of the funds to Mr. [M] and Ms. [N].

(35) [M] and [N] have no objection to petitioner's reinstatement to the practice of law.

## CONCLUSIONS OF LAW

(1) The misconduct for which petitioner was disbarred is not so egregious as to preclude immediate consideration of his petition for reinstatement.

(2) Petitioner has demonstrated, with clear and convincing evidence, that he possesses the moral qualifications, competency and learning in the law required to practice law in the Commonwealth of Pennsylvania.

(3) Petitioner's resumption of the practice of law will not be detrimental to the integrity of the bar, nor subversive of the interests of the public.

## DISCUSSION

The issue before the Disciplinary Board is whether the instant petition for reinstatement to the Pennsylvania bar should be granted. The determination of whether to readmit petitioner to the Pennsylvania bar requires a two-part analysis.

The Disciplinary Board must first decide whether the conduct which led to petitioner's disbarment was so egregious as to preclude consideration of his bid for reinstatement at this time. The threshold issue to be addressed in any reinstatement proceeding is, therefore, whether a sufficient amount of time has elapsed since the misconduct occurred during which the petitioner has engaged in a qualitative period of rehabilitation. See *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986).

The initial point of inquiry is whether the conduct for which the petitioner was disbarred is so offensive as to render present reinstatement impossible. "A review of the underlying offense is required as an initial step in determining eligibility for reinstatement." *Office of Disciplinary Counsel v. [O]*, 4 D.B. 76 at 4. According to *[O]*, there are certain types of misconduct so contrary to the integrity of the bar and interests of the public that no passage of time or amount of rehabilitation can circumvent the injustice that would occur if the petitioner were reinstated to the practice of law.

The question in the instant matter is whether petitioner's misappropriation of $12,000 entrusted to him by the heirs of [A], the misconduct for which he was subsequently disbarred, is so egregious as to preclude consideration of his possible reinstatement. (Although petitioner and the Office of Disciplinary Counsel stipulated on July 31, 1990, that petitioner engaged in two additional instances of misappropriation, that misconduct, while relevant to the issue of his fitness to resume the practice of law, is not the reason he was disbarred.) An examination of other Pennsylvania cases, as well as Disciplinary Counsel's statement to the Hearing Committee that the Office of Disciplinary Counsel does not oppose petitioner's reinstatement and is "not going to specifically argue that the threshold question has not been met," will assist us in our determination of whether the conduct which led to petitioner's disbarment is so offensive as to impugn his credibility as an officer of the court.

In the [P] case, the petitioner was reinstated following his disbarment for delivering a bribe to a public official, offering false testimony under oath after a grant of immunity, failing to make appropriate disclosure to a

federal grand jury and law enforcement officers, and "laundering" checks for a public official. *Office of Disciplinary Counsel v. [P]*, 26 D.B. 81, 7 D.&C.4th 260 (1991). Similarly, the petitioner in [Q] was readmitted to the bar after numerous convictions for making materially untrue statements to the Office of Housing and Urban Development, and fraudulent lot sales, as well as participating in mail fraud. *In re [Q]*, 49 D.&C.3d 298 (1988). Finally, we note another voluntary resignation case, in which the petitioner was subsequently reinstated after he unsatisfactorily handled client affairs. *Office of Disciplinary Counsel v. [R]*, Nos. 4 and 35 D.B. 79, 5 D.&C.4th 557 (1991).

This representative sampling of reinstatement cases, coupled with Disciplinary Counsel's decision not to file an opposition to Hearing Committee [   ] reinstatement recommendation, illustrates that although petitioner's misconduct was very serious and warranted severe discipline in 1982, it is not so contrary to the foundations of the legal system as to preclude immediate consideration of his prayer for reinstatement.

Because the petition for reinstatement is properly before the Disciplinary Board, we are free to now address the critical issue raised in any disciplinary proceeding: whether a sufficient period of time has elapsed since disbarment during which the petitioner has participated in qualitative rehabilitation. *Office of Disciplinary Counsel v. Keller*, 509 Pa. 573, 506 A.2d 872 (1986); *Office of Disciplinary Counsel v. [R]*, Nos. 4 and 35 D.B. 79, 5 D.&.C.4th 557 (1991).

The question in the instant matter is whether petitioner has successfully engaged in a period of rehabilitation for the misappropriation which led to his resignation

eight and one-half years ago. The first point to note is that the conduct for which petitioner was disbarred and additional acts of misconduct which were stipulated by the parties involve the misappropriation of entrusted client funds which were garnered as part of an estate or litigation representation. Because petitioner's misconduct centered around the mismanagement of client funds and dereliction of his fiduciary duties, it is crucial to examine what restitution he has made and how he has handled money since his disbarment. As noted by the Office of Disciplinary Counsel, "those who were the victims of his misconduct have been made whole." Petitioner promptly reimbursed the heirs of [A], the misconduct for which he was disbarred, as well as the [L] estate. Petitioner subsequently reimbursed the Client Security Fund for the amount it paid to the [H] estate, which was, along with the [L] case, the additional misconduct to which the parties stipulated. Petitioner has thus satisfied the restitution obligations requisite for reconsideration of his petition. See Rule 531, Pa.R.D.E.

During the period of his disbarment, petitioner has been employed as an insurance salesman for [S] and other companies. Since 1983, he has been a licensed life, health, property and casualty agent, and has also completed two courses sponsored by the Life Underwriters Training Council in Business Insurance and Disability Insurance. Although petitioner's insurance career has not been particularly lucrative, and he is the primary source of support for his partially incapacitated wife and son, he has not engaged in any financial improprieties or mishandled entrusted client funds. Petitioner's successful management of others' monies is therefore proof that he has been rehabilitated from

the temptation to violate entrusted funds which led to his disbarment.

The next query is whether petitioner, who has satisfactorily undergone qualitative rehabilitation for an offense which is not so outrageous as to preclude possible immediate reinstatement, possesses the moral qualifications and learning in the law required of a member of the Pennsylvania bar. See Rule 203, Pa.R.D.E. It is petitioner's burden to prove with clear and convincing evidence that he has the requisite moral qualifications and learning, and that his resumption of practice will not be subversive to the interests of the public nor detrimental to the integrity of the bar. See Rule 218 (c)(3)(i), Pa.R.D.E.

In the [R] and [Q] cases, the petitioner sustained his burden of proving his moral qualifications by presenting favorable character testimony by highly regarded attorneys. *Office of Disciplinary Counsel v. [R],* Nos. 4 and 35 D.B. 79, 5 D.&C.4th 557 (1991); *In re [Q],* 49 D.&C.3d 298 (1986).

In the instant matter, the parties have stipulated that seven witnesses, including five attorneys and a Catholic priest, would attest to petitioner's fine character. This stipulation, and with the fact that petitioner has made full restitution and successfully handled entrusted client funds during the period of his disbarment, prove that petitioner possesses the moral qualifications expected of a member of the Pennsylvania bar.

Petitioner must also prove he has the learning in the law necessary to resume practice. He has demonstrated the requisite learning in the law through his attendance at the Pennsylvania Bar Institute practice course at Carlisle in August 1988, and his reading of the *Pennsylvania Reporter* advance sheets, *Pennsylva-*

*nia Bulletin,* and *Pennsylvania District & County Reports,* third series.

In light of petitioner's successful engagement in a qualitative rehabilitation during the period of his disbarment, his high moral character and learning in the law, and the fact that no one, including those affected by his misconduct, oppose his reinstatement, we conclude that petitioner's reinstatement would not be detrimental to the integrity of the bar nor subversive of the interests of the public.

## RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that the petition for reinstatement of [petitioner] to practice law in the Commonwealth of Pennsylvania be granted.

The board further recommends that, pursuant to Rule 218(e), Pa.R.D.E., petitioner be directed to pay the necessary expenses incurred in the investigation and processing of said petition for reinstatement.

Dr. Gilbert dissents.

Messrs. Keller, Brown, Hill and Powell did not participate in the adjudication.

## ORDER

And now, August 28, 1991, upon consideration of the report and recommendations of the Disciplinary Board dated March 20, 1991, the petition for reinstatement is granted.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.

Mr. Justice Larsen dissents.